**Jason D. OBERON and Harry Lewis,**
**Plaintiffs,**

v.

**GENERAL HOST CORPORATION**
**et al., Defendants.**

**No. 71 Civ. 5326.**

United States District Court,
S. D. New York.

Dec. 22, 1972.

Abraham I. Markowitz, New York City, for plaintiffs.

Lovejoy, Wasson, Lundgren & Aston, New York City, for defendant General Host Corporation.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Carter Securities Corporation, Utilities & Industries Management Corp., Utilities & Industries Corp. and The Carter Group, Inc.

## MEMORANDUM

LASKER, District Judge.

This suit by shareholders of Cudahy Company arises from a successful cash tender offer by which control of Cudahy was acquired by General Host Corp. ("Host"). Plaintiffs, Jason Oberon and Harry Lewis, alleging violations of the Securities Exchange Act of 1934, Rule 10b–5 and the common law, sue on behalf of all common and preferred shareholders of Cudahy who tendered or had the right to tender their shares to Host pursuant to its tender offer on June 25, 1971. Defendants are Host, The Carter Group, Inc. ("Carter"), Utilities & Industries Corp. ("U & I"), Utilities & Industries Management Corp. ("Management") and Carter Securities Corp. ("Securities"). Carter owns 25% of U & I which owns 95% of Management. Securities is 100% owned by Carter.

The thrust of the complaint is that in order to induce Management to part with the large block of Cudahy shares which it owned, Host and the other defendants agreed on a plan to pay more for Management's shares than it was offering the general public. The complaint alleges, on information and belief, that this plan entailed the following steps: 1) Host offered to make Securities, Carter's wholly owned subsidiary, a co-dealer-manager of the tender offer at a compensation of $.15 per share tendered; 2) Host unilaterally breached this agreement; 3) Securities sued Host and received in settlement a large sum of money which represented a premium flowing to the Carter "family" for Management's shares. In addition, Securities, as broker-dealer, received $.50 for each share which was tendered through it.

All the defendants move for summary judgment dismissing the complaint.

Plaintiffs' and defendants' versions of the facts differ in several critical respects. However, defendants convincingly refute every theory advanced by the plaintiffs in the complaint and in the opposing papers on this motion. John Glynn, Vice President and Controller of Host, Tom Scheinman, Vice President of Management (and a member of the bar of the State of New York), Julian Robinson, Secretary and Treasurer of Securities, and Richard Wiesenthal, Vice President and Controller of Carter and Assistant Treasurer and Controller of U & I, all swear that none of the defendants received any compensation related to the sale of Management's Cudahy shares other than the price received by all tendering shareholders and the $.50 per share commission paid to any broker-dealer who participated in the offer. (Glynn Affidavit, pars. 8, 9, 11, 12, 13, 14; Scheinman Affidavit, pars. 6, 7, 8, 9; Robinson Affidavit, pars. 7, 8, 9, 10; Wiesenthal Affidavit, pars. 6, 7, 8, 10, 11, 17, 18.) With regard to the $.50 commission, it is notable (and not disputed) that Management's shares actually were not tendered through Securities but through D. H. Blair & Co., a company altogether independent of Carter, Securities or any of the "family". (Scheinman Affidavit, par 7.)

Against this plethora of factual material submitted by officers of each of the defendants, there stand only the allegations of the complaint and an affidavit of plaintiffs' attorney (whose compliance with the first sentence of Rule 56(e) is questionable at best) which reiterates the major premise of the complaint and suggests a few more theories of recovery which are entirely rebutted by Wiesenthal's reply affidavit.[1] When

1. In his affidavit in opposition, plaintiffs' attorney raises several new issues: 1) Carter itself or some affiliate other than Securities may have received compensation for Securities' discontinuance of the action against Host; 2) Securities may have received compensation for Management shares through D. H. Blair & Co.; and 3) since Management had a right of first

refusal on shares owned by another (unaffiliated) company, United States Smelting Refining and Mining Co. ("Smelting"), it may have coerced the latter into selling its shares through Securities. Richard Wiesenthal, Vice President and Controller of Carter and Assistant Treasurer and Controller of U & I, states on personal knowledge that 1) and 2) are

the dust settles there is simply no genuine issue of material fact; and summary judgment is in order.

Plaintiffs seek to ward off the inevitable by reliance on Schoenbaum, v. Firstbrook, 405 F.2d 215 (2d Cir. 1968) (en banc). It is true that *Schoenbaum* stands for the proposition that it is a rare day in June when summary judgment can be properly granted in a shareholders' suit before completion of discovery (which has not yet occurred in this case). *Id.* at 218. However, *Schoenbaum* does not support the position that summary judgment can never be granted in a case such as this. *Schoenbaum's* discussion of why it was error to grant judgment there highlights the reason why judgment *is* appropriate here:

> "In the present case the plaintiff's allegations constitute a claim that Aquitaine, *knowing* the true value of Banff stock, used its control over Banff to acquire 500,000 shares at a vastly inadequate price. *The allegations have a sufficient factual basis*— Aquitaine's control, Aquitaine's knowledge of the oil discovery, the inadequacy of the price paid for the stock —to require at least that the plaintiff be permitted through discovery to develop the evidence to counter defendants' affidavits." *Id.* (emphasis added).

This brief statement indicates how different this case is from *Schoenbaum.* Here, there are no facts other than Securities' relationship to Management to support plaintiffs' central contention that Management was paid more for its shares.

false. Wiesenthal Affidavit, pars. 2, 7, 8, 9, 10, 11. As to 3), plaintiffs' position is entirely without merit. First, even if plaintiffs could establish that Management coerced Smelting into tendering its shares through Securities, it is doubtful that this would state a cause of action since Securities only received the publicly disclosed commission paid to all broker-dealers. Second, assuming it did state a cause of action, the complaint, although it mentions Management's right of first refusal, *en passant,* bases no claim on it. Third, it is inconceivable that Smelt-

Furthermore, *Schoenbaum* differs from the instant case in another significant respect. *Schoenbaum* alleged a conspiracy among the defendants, bringing into play questions of knowledge and intent which could not be determined or even illuminated without depositions or trial. Here, the sole issue does not involve motive or intent. Plaintiffs have made no showing that they could, through discovery, prove the facts to be other than defendants swear them to be. These facts entitle defendants to summary judgment dismissing the complaint.

The motion for summary judgment is granted. This disposition renders moot defendants' motion for a protective order and that motion is denied.

It is so ordered.

ing could have been coerced, since it held a right of first refusal on a roughly equivalent number of Management shares and, therefore, had as much leverage to coerce Management as Management had to coerce it. At any rate, since Smelting was entitled to receive the same price from Management as was offered by Host, it could hardly have mattered to it whether or not Management exercised its first refusal rights. In short, these allegations are smoke without a fire and do not raise factual issues which cannot be disposed of on this motion.